ANDREW GOLDEN v. NATIONAL UTILITIES COMPANY, a Corporation, WILLIAM L. YANCEY and HERMIA YANCEY, his wife, Appellants. No. 39909.—201 S. W. (2d) 292.

Division One, March 10, 1947.

Rehearing Denied, April 21, 1947.

*Clark, Boggs, Peterson & Becker, Howard B. Lang, Jr.,* and *William L. Nelson, Jr.,* for appellant.

*Errol Joyce* and *Walter A. Raymond* for respondent.

88

 CONKLING, J.—Respondent had judgment in the Circuit Court of Linn County against National Utilities Company (hereinafter called appellant) for $8,000.00 for the death of his wife, then 26 years of age, occasioned by burns received in the basement of his home at 210 South Main Street in Brookfield, Missouri, on August 12, 1944. Appellant furnished artificial gas to the general public in that city and was charged with permitting some of such gas to leak from its conduits into respondent's basement, accumulate therein and explode, thereby causing the death. The first count of the petition charged general negligence as against appellant alone.

Count two of the petition charged that appellant and William L. Yancey and his wife, who owned the residence in question, in which respondent and his wife were living on August 12, 1944, with negligently installing house service pipes and negligently permitting the same to remain in a defective condition so as to cause the escape of gas and the resultant explosion. At the close of plaintiff's evidence the court sustained the separate motions of appellant and of Yancey and his wife for a directed verdict on count two. Yancey and his wife dropped out of the case and the trial proceeded as against appellant on count one alone. There was no appeal from the trial court's rulings as to count two.

In this court appellant contends (1) that it was error to permit the witness Benberg, an expert called by respondent, in answer to a hypothetical question, to testify that gas escaped from appellant's service pipe and entered respondent's basement, (2) that there was no substantial evidence of causal connection between any act or omission of appellant and the explosion, (3) that in any event its motion for a directed verdict should have been sustained because the record discloses no actual or constructive notice to appellant of the escape of any of its gas, and (4) that the giving of each instructions A-1 and A-3 was prejudicial error. Appellant concedes that if its position with respect to the admissibility of the Benberg testimony be not well taken that then there is testimony in the record to establish the necessary causal connection. In view of the contention that no case was made which could have been submitted to the jury, we consider only the evidence most favorable to plaintiff and the inferences to be drawn therefrom and disregard the evidence of defendant unless it aids plaintiff's case.

In June, 1943 appellant received a complaint from Mrs. Yancey, who then lived there, that the gas pressure was low at 210 Main Street.

Appellant's service superintendent, W. E. McReynolds, appeared in response to such complaint and adjusted the stove burners. No test was made of the condition of the service pipe in from the gas main. In October, 1943 Mrs. Yancey again complained to appellant of low gas pressure. McReynolds again adjusted the stove burners and approved the service, but again made no test of the service pipe in from the gas main. Such variable pressure could have been suggestive of a line leak of gas. On January 25, 1944, Mrs. Yancey again complained to appellant of low pressure. On its "trouble order" respecting such complaint to McReynolds appellant noted "no gas-service to dig up". In response to that complaint McReynolds, for appellant, dug up only six or eight feet of the approximately 45 feet of the service pipe in to 210 Main Street. The six or eight feet excavated was between the sidewalk and curbing in front of the house. It was stopped up, corroded, rusted out, and, being unfit for use, was removed and replaced with new pipe. There was a leak in that pipe, and when uncovered it gave off an odor of gas. Disturbance of old service pipe often started leaks. McReynolds did not know of the condition of the remainder of the service pipe on in to the house at 210 Main Street, but testified there was no reason to believe it was in any better condition than the portion removed. However, the remainder of the service pipe on in to the house was neither excavated for examination, nor checked for leaks by pressure tests, or otherwise. The gas pipes had been laid more than forty years, were wrought iron and subject to corrosion and rust.

When respondent, his wife and young daughter were moving in the house on July 17, 1944 McReynolds set the gas meter, connected the gas stove, cleaned and adjusted the gas water heater, checked all fixtures and service pipes inside the house and showed Mrs. Golden how to light the gas water heater. However, McReynolds made no excavation, check, examination or pressure test of appellant's service pipe leading in to the house. Thereafter, and before August 12, 1944, the water heater and the oven of the stove would flash out or puff when any attempt was made to light them. On August 12, 1944 about 9 P. M. Mrs. Golden requested another occupant of the premises, Mary Simon, to accompany her to the basement to light the gas water heater. She had lighted it about twice before. They went through the trap door on the front porch down the steps toward the basement. Respondent's wife lighted a match about the time she reached the bottom of the basement stairs. A loud explosion occurred accompanied by a sudden flash and a burning ball of fire reaching 40 feet high into the tree in front of the house. Both were severely burned. McReynolds arrived at the premises within two or three minutes thereafter. The water heater was found turned off. The city firemen extinguished the fire in the basement. McReynolds testified there had been an explosion of artificial gas. Benberg, respondent's expert, so testi-

fied. We find no contrary opinion expressed by any witness in this record.

On March 13, 1945 appellant had its expert, Joseph Hawthorne, excavate another portion of the service pipe between the sidewalk and the curbing and only eight or ten inches nearer the house than that six or eight foot portion appellant had replaced in January, 1944. That excavation developed that there was a large hole, an inch by a half inch in size, in that portion of the service pipe. That hole, only 41 feet from the house, was sufficient size to let all the gas out of the service pipe. That piece of pipe with the above mentioned large hole rusted therein was before the jury, and is filed here as an exhibit. A pressure test thereafter applied by Hawthorne showed further leaks in the service line leading on in to the house. In November, 1945 in the presence of Hawthorne, and in the presence of Benberg for respondent, the entire service pipe on into the basement of the house was excavated and found to be rusty and cracked open at a point only 21 feet from the house. Gas was smelled there. That section of pipe was also before the jury and is filed here as an exhibit. The soil around the pipe along the entire service line to the basement wall of 210 Main Street was a bluish gray indicating escaped gas. Gas was smelled. The basement walls had cracks therein. Butane Gas, distributed in Brookfield, is twice as heavy as air and settles instead of rises. As above noted, Benberg testified that it was his opinion that gas had escaped from the defective service line and entered the respondent's basement. Hawthorne testified that escaping gas will follow the line of least resistance and will travel as far as 200 feet under the ground. Other facts of record will be later noticed.

Appellant contends that respondent's expert witness, Benberg, was not qualified to express an opinion as an expert; that his testimony was not based on facts but was conjecture; that the question upon which he expressed an opinion was not a proper field for expert testimony. We have held that the subject matter upon which he was testifying was a proper field for expert testimony. Stephens v. Kansas City Gas Company, 354 Mo. 835, 191 S. W. (2d) 601, and cases there cited. Appellants offered the expert testimony of Hawthorne and pursued the same line of inquiry. The trial court did not abuse its discretion in ruling that the witness was qualified to express an opinion. Stephens v. Kansas City Gas Company, supra. It appears that the opinion the witness expressed was based upon his own investigation, the results of which were before the jury, and upon other facts and adequate data. Vitale v. Duerbeck, 338 Mo. 556, 567, 92 S. W. (2d) 691, 695. It is further contended that the question omitted material facts; did not contain sufficient facts upon which to base an opinion; limited the witness to facts which dictated his answer; and that his answer was in conflict with physical facts. Of those in order. The various hypothetical questions asked, the revisions of

the questions, and additions thereto and the objections thereto.extend for some thirty pages of the transcript of the testimony. Respondent's counsel inquired wherein the question was improper but the omissions now suggested in appellant's brief were not then suggested. In any event, the suggestions made in this court are of no significance to the question asked Benberg. The questions did hypothecate the facts in accordance with respondent's theory and do not assume any fact not in evidence. It is not required that every fact of record be stated in a hypothetical question, particularly where not of significance to the question asked. Evans v. Partlow, 322 Mo. 11, 16 S. W. (2d) 212, Dillard v. East St. Louis Railway Company, 150 S. W. (2d) 552 (St. L. Ct. of App.). Appellant contends that the question by not including the fact that there was a sewer connection in the basement limited the witness to facts which dictated his answer. Close examination discloses a situation wholly unlike that which was ruled in DeDonato v. Wells, 328 Mo. 448, 41 S. W. (2d) 184., Here the witness was authorized by the question to consider the results of his own investigation, all of which was before the jury. The question contained ample facts ▮▮▮▮ and adequate data to authorize the giving of an expert opinion. Appellant contends Benberg's answer is in conflict with physical facts and must be disregarded. There was much testimony pro and con from the two expert witnesses on the question of whether gas upon escaping from its confinement in a defective service pipe might go up and escape into the air, whether it might follow along the service pipe or seep through the earth and enter the basement through the crevices and cracks in the wall. This goes only to the credibility of the witnesses and the weight and value of their testimony. Those were questions for the jury. Contentions similar to those made here were ruled in Vitale v. Duerbeck, supra, wherein we said: "Defendant again argues the impossibility of a steam explosion from the firing of the heater, as stated by the Vitales, and the amount of fuel which plaintiff's testimony shows was used. However, there is expert testimony that it was possible, which we cannot say is unbelievable, and the claimed course of events cannot be said to be so clearly in violation of physical laws and scientific knowledge as to be obviously impossible. Defendant had expert testimony that it was not possible and also to the effect that the condition of the remains of the heater after the explosion and the surrounding circumstances disclosed by the testimony, in their opinion, showed that the explosion took place in the fire box and was caused either by gases formed from the use of improper material for fuel (leather, rubber, etc.) or from high explosives (dynamite or blasting powder) placed therein. Of course, it is not at all unreasonable to believe that steam, if confined, has force powerful enough to cause such an explosion. Defendant further contends that the testimony of Vitale and Carter in all the trials has been so contradictory as to destroy its probative

value. As held in the Bloecher case, all these matters were for the jury." We rule that the court did not err in admitting the testimony of Benberg that the gas from the defective service pipe entered respondent's basement and there formed an inflammable mixture which exploded. Such testimony was substantial evidence of causal connection.

Did appellant have any notice that gas from its service line might escape into respondent's basement? We think so. While appellant was not an insurer, it was carrying in its pipes near to and in to the residence in question a commodity which was highly dangerous. In Nomath Hotel Company v. Kansas City Gas Company, 204 Mo. App. 214, 223 S. W. 975, 980 the Kansas City Court of Appeals said: "It is true, owing to the very dangerous character of gas and because of its well-known tendency to escape from the mains and percolate through the earth into cavities or openings and there burn or explode, causing great injury, the defendant is charged with a very high degree of care in the transmission and control thereof. . . . A gas company is not an insurer, but is held to a degree of care commensurate with the dangerous character of the commodity it handles." See also, Stephens v. Kansas City Gas Company, supra, where authorities are collated. How far could appellant ignore its responsibility in the transportation and handling of such a commodity? It knew that in 1943 complaints of low gas pressure had twice come from 210 Main Street, which could have and should have suggested line leaks. On neither of such occasions were any line tests made. It knew that its pipes, subject to rust and corrosion, had been in the ground there for over 40 years, and that in that time much of its pipe had so rusted out that appellant had been compelled to replace it. Appellant knew that in January, 1944, in response to a third complaint from these premises, it had dug up and replaced six or eight feet of the service pipe to respondent's house in the parking and found gas leaks therein, and found that pipe so corroded, rusted and stopped up that it was discarded and replaced with new pipe. Appellant knew it made no examination or tests of the remainder of the service pipe on in to the house and McReynolds testified that in January, 1944 he had no reason to believe the remainder of the service pipe on in to the house was in any better condition than the defective pipe which he was compelled to replace about six months before the explosion. Subsequent developments, in March and November of 1945, when further excavations of the service pipes were made indeed disclosed that the remainder of the service line was in no better condition than that defective portion replaced in January, 1944. Some of it was much worse.

The facts here should have alerted appellants in January, 1944 to a full excavation, investigation and test of the service pipe in to this house. In Guthrie v. City of St. Charles, 347 Mo. 1175, 1189, 1190,

152 S. W. (2d) 91, in discussing whether the appellant city was justified in its inaction before a sewer gas explosion we said: "We think the officials and servants of the appellant city, as reasonably prudent men, *were put on guard* (emphasis ours) by the general knowledge: that all sanitary sewers contain gas, some of which is explosive when mixed with air and exposed to an open flame; that when such a sewer is filled to capacity with moving water the latter will push the gas ahead of it; and that open flames are common in population centers, as from lamps, lanterns, matches, furnaces, stoves, automobile exhausts, electric sparks and the like. . . . If a defendant in the exercise of ordinary care *should have known the situation was unsafe and that some injury was likely to result* (emphasis ours), not that such was a mere remote possibility, he is dutybound to fend against it." (Citing cases.) In Weed v. American Car & Foundry Company, 322 Mo. 137, 145, 14 S. W. (2d) 652 discussing facts which put one on notice, we said: " 'A notice is regarded in law as actual when the party sought to be affected by it knows of the existence of the particular fact in question, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information.' Actual notice often means knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and to ascertain the ultimate fact. (46 C. J. 539-540.) In 20 Ruling Case Law, pages 346-347, it is said: "*Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand* (emphasis ours); and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts. . . . Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge.' " In 38 Am. Juris., sec. 24, p. 667, it is said: "Every person is under a duty to exercise his senses and intelligence in his actions in order to avoid injury to others, and *where a situation suggests investigation and inspection in order that its dangers may fully appear, the duty to make such investigation and inspection is imposed by law.*" (Emphasis ours.) In Nomath Hotel Company v. Kansas City Gas Company, 300 Mo. 240, l. c. 253, 253 S. W. 975, prior to the explosion there had been no notice to defendant that there was any gas leaking into or suspected of leaking into the building in question, but three weeks prior to the explosion there was a gas fire in the street nearby caused by gas from a broken main. This court held there that such street fire from a broken main "was notice thereof to defendant three weeks before the explosion."

We rule that the facts here put appellant on guard and on inquiry that an ill result might occur, and such facts of themselves constitute sufficient notice not only of a dangerous condition, but that gas might seep into the respondent's nearby basement and be caused to explode. Appellant was transporting a dangerous commodity and should have been constantly vigilant to keep the gas confined in its pipes. There was a duty on appellant to find out whether gas was escaping from other parts of the service pipes, but instead of making further examination appellant was content to excavate and replace only six or eight feet of the service line. From the condition of the two pieces of service pipe before the jury and filed here as exhibits, the jury could fairly conclude that such holes had existed in the service pipe long prior to the explosion in August, 1944. The trial court properly ruled in submitting the case to the jury.

 Appellant contends the court erred in giving plaintiff's instruction A-1 because the instruction (1) submitted the question of notice, which appellant contends was not pleaded, (2) was a roving commission, (3) assumed negligence and (4) erroneously instructed on the degree of care owed by appellant. The petition pleads general negligence in that "defendant negligently and carelessly caused and permitted" gas to escape, etc. We held in Berberet v. Electric Park Amusement Company, 319 Mo. 275, 3 S. W. (2d) 1025 that such an allegation is equivalent to an allegation that "defendant knew the condition to exist". We rule the point against appellant.

 It is contended that the instruction was a roving commission because it did not limit the jury to a finding that the gas in question escaped from the particular holes shown by the evidence to have existed forty-one and twenty-one feet from the house. The service pipe being underground it was impossible for the proof to isolate or the jury to find the exact hole or holes from which the gas came. Such finding was neither required nor essential. Under the petition and the record facts, appellant was liable for the escape and later explosion of any gas from any hole or either hole. The proof showed the entire service pipe to be rusty and corroded. Appellant was responsible for the entire service line. Its responsibility cannot be evaded merely because it was impossible for the proof to establish which particular bit of gas escaped from which particular hole. Nothing in the instruction authorized or permitted the jury to evolve any foreign theory of negligence but it confined the jury within both the pleadings and proof. It is contended that the instruction assumes negligence. We have repeatedly held that where an instruction commences, as does this one, "If you find and believe from the evidence", and then, after submitting certain facts ends with "if you so find" as does this instruction, a finding of facts hypothecated is thereby required of the jury. Dohring v. Kansas City, 81 S. W. (2d) 943 (Mo. Sup.). Instruction 2 advised the jury that the court did not

assume as true any matter or fact mentioned in the instruction but left such determination to the jury. There is no merit in appellant's contention. The further criticism of instruction A-1 is that it erroneously instructed on the degree of care required. The measure of care laid down in instruction A-1, and here complained of, is the measure of care required of gas companies and approved by us in Stephens v. Kansas City Gas Company, supra. We adhere to the rule there laid down and rule the point against appellant. There was no error in the giving of instruction A-1.

It is also contended by appellant that instruction A-3 on the measure of damages was erroneously given because it stated that any damages allowed should not exceed $10,000, but gave no reason for mentioning such sum, and that the instruction was indefinite and furnished no guide to the jury. Appellant takes the position that such an instruction indicated approval by the trial court of a verdict of $10,000. The verdict of $8,000 indicates the jury did not so consider it. In Steger v. Meehan, 63 S. W. (2d) 109 (Mo. Sup.) this court approved a measure of damage instruction in an action for death in substantially this form and ruled that where, as is the case here, "defendants asked no instruction further limiting or detailing the elements of plaintiff's damages and directing the jury how to estimate them, and not having done so cannot now complain". See also Morton v. Southwestern Telegraph & Telephone Co., 280 Mo. 360, 217 S. W. 831. We rule the point against appellant.

Finding no reversible error, the judgment of the Circuit Court is affirmed.

It is so ordered. All concur