GAS SERVICE CO. v. HELMERS
(two cases).

Nos. 13984, 13985.

United States Court of Appeals
Eighth Circuit.

Jan. 17, 1950.

Charles M. Miller, Kansas City, Mo., for the appellant.

J. M. Fisher, Kansas City, Mo. (Larence C. Shrader, Kansas City, Mo., was with him on the brief), for the appellees.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These two appeals are from judgments for the plaintiffs in two actions in the district court involving the same facts and the same issues as to liability of the defendant-appellant. They were consolidated for trial in the district court and they are submitted here on a single record. They may

accordingly be disposed of in a single opinion. Jurisdiction is predicated on diversity of citizenship.

In each case damages were claimed and awarded for injuries resulting from a fire in a dwelling house in Kansas City, Missouri, ignited by an explosion of gas due, the plaintiffs alleged, to the negligence of the defendant The Gas Service Company and its servant, one Ollie Odle.

The plaintiff George H. Helmers in No. 13,984 sought damages for the wrongful death of his wife who lost her life in the fire, and for household goods. In No. 13,-985 the plaintiff Maude Helmers, mother of George H. Helmers, demanded damages for personal injuries and for loss of personal property.

The defendant admitted jurisdiction of the court and denied all material allegations of both petitions for damages. The cases were tried to a jury. At the close of plaintiffs' evidence and again at the close of all the evidence the defendant moved for directed verdicts which were by the court overruled. The cases were submitted to the jury, verdicts were returned for the plaintiffs and judgments were entered thereon from which the defendant appeals. In this court the appellant contends that the court erred in denying its several motions for a directed verdict, the grounds of which were that the plaintiffs failed to prove any actionable negligence against the defendant or its servant Ollie Odle.

The alleged negligent act resulting in the explosion and fire and causing the damages complained of occurred on June 10, 1948, when Ollie Odle, a young man 23 years of age, employed by the appellant as a fitter, installed a gas meter in the basement of a duplex house on West 75th Street in Kansas City, Missouri. The building was new. It faced 75th Street and was divided into two dwelling units adjacent to each other, the basements of which were separated by a concrete wall. The west apartment had been occupied by a family named Wilson for approximately 20 days when the fire occurred. A few days before June 10, 1948, George Helmers had rented the east apartment for himself, his wife and his mother

Maude Helmers, and they began moving in on or about June 8th. Maude Helmers and George Helmers' wife and another woman were in the apartment arranging the furniture on the afternoon of the 10th when the explosion occurred resulting in the death of George's wife and the other woman and seriously injuring his mother.

The gas piping for the house had previously been constructed for the owner by a plumber. The appellant's service pipe ran from its main in 75th Street to a point inside the north basement wall of the Wilson apartment where it connected with two meters, one of which connected with the piping in the Wilson apartment and the other with the piping in the Helmers apartment. The meter serving the Helmers apartment had not been installed prior to June 10, 1948; but sometime before that date the Helmers had requested the appellant to install a meter. Pursuant to the provisions of an ordinance of the city of Kansas City the appellant Gas Company was not permitted to turn on gas until the house gas pipes in the building had been examined, approved and tested by the Chief Inspector of Plumbing of the city, or his deputy, and a Ready Notice furnished the Gas Company. Such Ready Notice, dated March 18, 1948, certified that the gas piping in the house had been tested and was "Gas Tight" and ready for gas to be turned on; and it further stated, "As any injury may occur subsequent to this inspection its soundness is not guaranteed."

The evidence also shows that on March 24, 1924, appellant filed its Rules and Regulations with the Public Service Commission of Missouri and that they are still in effect. Rule 26 is as follows: "Rule 26. The Company shall not turn on gas where it has actual notice of defective house-piping, appliances or equipment, or that the consumer is violating the city ordinances, or state statutes relating to the use of gas; but the Company shall not be required to inspect or take notice of the condition of the house-piping, appliances or equipment of consumers or the violation of city ordinances or state statutes."

With a request to install a meter and to turn on the gas in the Helmers apartment,

and with the Ready Notice, supra, from the Chief Inspector of Plumbing for the city of Kansas City on file, the Gas Company, on June 10, 1948, sent Ollie Odle to make the installation. The plumbing for distributing gas to appliances in the Helmers apartment comprised a 1¼ inch pipe running from the meter on the north wall of the basement of the Wilson apartment south along the ceiling about half way from the point of beginning to the south end of the basement where it turned east through the partition wall into the basement of the Helmers apartment, then south for some distance, then east for short distance to a "Gas Shut-off Valve" beyond which pipes distributed it to the appliances in the Helmers apartment. This distributing system consisted of three pipes, one of which led to a water heater, another to the furnace, both of which were in the basement, and another ¾ inch pipe referred to as a "riser" passed up through the floor and was intended to supply gas to a kitchen stove.

When Odle arrived at the premises on June 10th he proceeded to install the meter. He first placed it on the wall, then connected it to the intake pipe coming from the main line in the street, after which he turned on the gas and observed the dials on the meter to determine whether the meter or the couplings which he put in leaked, and he found that they did not leak. He then tightened up the couplings to the house line and turned on the gas to see whether the house line leaked. He found that the hands on the dial did not move indicating that it was tight. These tests were made, he testified, in accordance with the instructions he had received in the school of instructions maintained for its employees by the appellant Gas Company. He further testified that these tests were made for a two-fold purpose, first, to see that the meter was registering the flow of gas, and, second, to see that there was no gas escaping into the premises. That had been the practice since he had been employed to install meters.

While at the premises Odle was requested to turn the gas on in the water heater. For this purpose he left the basement in the Wilson apartment and went to the Helmers basement. He first aired out the line to the water heater. He then tried the water heater and could get no gas. He looked over the main pipe line coming into the Helmers basement from the meter in the Wilson basement and discovered the gas shut-off valve in that pipe inside the Helmers basement. The valve was closed and he opened it. At the time he made the tests at the meter in the Wilson basement the shut-off valve was closed. After he opened it he was able to get gas in the water heater. He was also able to get gas through the line to the furnace. He did not observe at any time the line going up to the Helmers kitchen; and he did not go back to the meter to see whether or not after opening the gas shut-off valve any gas was escaping into the Helmers apartment. Unfortunately the end of the riser pipeline to the kitchen was neither capped nor plugged and 600 cubic feet of gas passed through it into the Helmers apartment during the next two or three hours resulting in the disastrous explosion and fire which caused the injuries complained of in these actions.

The appellees contend that Odle was negligent in not returning to the meter after turning on the gas at the shut-off valve in the Helmers apartment before he left the premises to see whether or not gas was escaping into their apartment; that had he returned he would have found the hands on the meter moving, indicating that gas was passing through the pipes and into the apartment; that Odle having undertaken, in accordance with his instructions, to determine whether gas was escaping into the Helmers apartment, it was his duty to exercise ordinary care to discover any leak in the apartment; and that he negligently failed to do so; that under the circumstances it was appellant's duty to shut off the gas at the meter, to close the shut-off valve in the Helmers main gas line or to cap or plug the open pipe in the kitchen.

Under the instructions given by the court the jury found the appellant and Odle negligent as claimed by the appellees.

It is appellant's contention that Odle had no actual notice of the open gas pipe riser in the Helmers kitchen and that, therefore, neither Odle nor appellant was guilty of

any negligence; and that Rule 26, supra, of the Rules and Regulations of the appellant filed with the Public Service Commission is applicable. This contention presents the important question to be decided.

Is rule 26 applicable? The rule reads: "The Company shall not turn on gas where it has actual notice of defective house-piping, appliances, or equipment, * * * but the Company shall not be required to inspect or take notice of the condition of the house-piping, appliances or equipment of consumers. * * *"

■ Granting that the rule is a valid rule, the important question here pertains to its applicability to the circumstances of this case. The law of Missouri is controlling, and where the law applies it is superior to the company's regulations, provided they are in conflict.

■ The rule in Missouri is that "ordinarily a gas company is under no duty or obligation to inspect pipes and appliances in a house which does not belong to it, and is not ordinarily liable for injuries which may have resulted from a defect in the house pipes or appliances unless some causal connection is shown between some proven defect and some negligence of the gas company.

■ "But notwithstanding such ordinary rule all of the authorities hold that a gas company is to be held to the exercise of a high degree of care which is commensurate with the deadly and dangerous character of its product, and even though the defect is in appliances belonging to the consumer, if the gas company is notified of the escaping gas its duty is to do something about it, either to repair or cause to be repaired the defect or to shut off the flow of gas until repairs are made." Barrickman v. National Utilities Co., Mo.App., 191 S. W.2d 265, 268; Golden v. National Utilities Co., 356 Mo. 84, 201 S.W.2d 292; Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670.

The Barrickman case holds, also, that notice means knowledge of "any fact that would put an ordinarily prudent man upon inquiry * * *." See, also, Laughlin v. Findlay, 324 Mo. 1021, 25 S.W.2d 464, 465; Messmer v. St. Louis County Gas Co., Mo.

App., 42 S.W.2d 963, 965. In the Messmer case it is said "notice or knowledge will be presumed where the facts and circumstances are such that the company, by the exercise of due and proper diligence, might have discovered and remedied the defect complained of in timely manner."

■ These rules are analogous to the law of landlord and tenant to the effect that "when the landlord, whether obligated so to do or not, undertakes to repair [the premises] and thereby negligently creates a defect or danger whereby the tenant, himself in the exercise of due care, is injured, the landlord is liable." Byers v. Essex Inv. Co., 281 Mo. 375, 219 S.W. 570, 571; Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844, 847. And see Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670, 674.

■ Another rule, often stated by the Missouri courts and applicable in this case, is that "The breach of an established custom as well as of an ordinance or statutory regulation or requirement is negligence per se on the part of the one committing the breach * * *." Swigart v. Lusk, 196 Mo.App. 471, 192 S.W. 138, 140.

In the case of Public Utilities Corporation of Arkansas v. McNaughton, 8 Cir., 39 F.2d 7, a verdict and judgment for the plaintiffs was sustained in an action against a gas company for damages resulting from an explosion of gas in a residence occupied on the day of the explosion by the plaintiffs. At their request the gas company made connection of its pipes with a meter box for measuring and distributing gas to the service pipes in the residence. The service pipes were defective permitting gas to escape into the residence where it was ignited causing the explosion. It was held that the employee of the gas company negligently failed to ascertain whether the service pipes were in safe condition before turning on the flow of gas, which was easily ascertainable from an inspection of a dial on the meter.

Conscious, no doubt, of its legal responsibility in the handling of gas as a dangerous instrumentality, the officers of the Gas Company maintained a school of instruction for its employees. Mr. Odle attended that

school. The appellant's Superintendent of Installation and Service Work testified that he had been with the Company approximately 32 years. Referring to the two tests the Company required its fitters to make when a meter is installed in a residence, he said the first purpose of the test is to determine whether or not the meter is registering the flow of gas, and the second purpose is to determine whether or not any gas is escaping into the premises before the fitter leaves the premises. That he said had been the custom ever since he had been connected with the gas company.

 It seems clear that tested either by the law or by the custom and practice of the appellant Odle was negligent in failing to go back and look at the meter after he opened the shut-off valve in the basement of the Helmers apartment. He found no gas passing into the service pipes in that apartment before he left the basement in the Wilson apartment; and he found when he opened the shut-off valve in the Helmers apartment that the gas flowed into those pipes. After he closed the furnace valve and the water heater valve had he gone back to inspect the meter he would have found gas still flowing into the pipes, and that inevitably it was escaping somewhere into the house. By failing to go back and read the meter and then either shut the valve or find where the gas was escaping and repair it, he violated the law and disobeyed the Gas Company's instructions. His negligence was the proximate cause of the disaster which followed. Rule 26 neither excused nor justified his negligence. He knew that gas could flow to the piping in the Helmers apartment only through the shut-off valve which he had opened in the Helmers basement, and the Ready Notice, supra, which he saw, warned him that "As any injury may occur to the piping subsequent to this inspection its soundness is not guaranteed." He testified that he did not notice the riser pipe in the Helmers basement when he was working with the water heater and the furnace piping, but the evidence shows that it was immediately before him at that time and he should have seen it. It is not known by whom or when the cap was removed from the riser pipe; however, it was gone, having been removed by some one at some time. But that it was open would have been discovered by Odle had he looked at the dial on the meter before leaving the premises pursuant to his instructions.

Affirmed.