## GAS SERVICE CO. v. PAYTON.

No. 13986.

United States Court of Appeals
Eighth Circuit
Mar. 3, 1950.

506

Charles M. Miller, Kansas City, Mo. for appellant.

Hale Houts, Kansas City, Mo. (J. D. James, O. L. Houts, Hogsett, Trippe, Depping, Houts & James, Kansas City, Mo., on the brief) for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a judgment for damages in the sum of $2,000 awarded to Anne Payton, appellee, for personal injuries sustained by her from an explosion and fire in a dwelling house in Kansas City, Missouri, caused by the igniting of escaping natural gas due to the alleged negligence of the appellant, The Gas Service Company and its employee, Harold Hughes. The suit was brought in a Missouri state

court and was removed to the federal court, there being diversity and requisite amount involved. Trial was had before a jury and at the close of plaintiff's evidence and at the close of all the evidence, appellant moved for directed verdict, each of which motions was overruled and the case was submitted to the jury. Appellant contends for reversal that the court erred (1) in denying the motions for directed verdict on the ground that appellee failed to prove any actionable negligence against appellant or its servant, Hughes, and (2) in refusing to receive in evidence certain provisions of the Building Code of Kansas City, Missouri, offered by appellant.

### Statement.

Appellee was employed in Kansas City and lived in the southwest corner room on the first floor of a dwelling house owned and operated by a Mrs. Lola Owen in Kansas City. The injuries complained of resulted from an explosion of natural gas in appellee's room when, on the afternoon of September 28, 1948, appellee returned to her room from work, stood a few steps inside the door and attempted to light a cigarette. When appellee lighted the match, natural gas in the room was ignited causing an explosion and fire and the injuries complained of. The gas which exploded entered appellee's room through a riser pipe which extended through the floor of the room and several inches above it and had a three foot length of rubber hose connected to it. Neither the hose nor the riser pipe to which it was attached were capped. The pipe led down to the gas furnace main line in the basement of the house and was connected to that main line pipe by means of a "T" connection. A pilot line pipe ran downwards toward the basement floor and then into the furnace from one arm of the "T" connection, and the riser pipe ran from the other arm of the "T" connection upwards toward the basement ceiling and then directly along and under the ceiling and then into appellee's room. Thus gas from the gas furnace main line was permitted to flow into both the pilot line pipe and into the riser pipe. Someone, previous to Mrs. Owen's pur-

chase of the house, had constructed and used this makeshift and unlawful arrangement by removing an "ell" connection, which properly and according to standard connected the pilot line to the furnace, and substituted this "T" connection so that besides connecting the pilot line to the furnace, another pipe could be connected to the main line for attachment to a gas heater in the room subsequently occupied by appellee. The heater was removed by Mrs. Owen when she purchased the house but the hose connection was left intact and open in the room.

On September 27, 1948, Mrs. Owen called appellant and requested that her gas furnace be turned on. At 4:00 p. m. on the following day, September 28, in response to Mrs. Owen's call, appellant sent its employee, Hughes, to the Owen house to light the furnace. Mrs. Owen testified that she informed Hughes that she had disconnected a gas heater in appellee's room and wanted him to check the pipe leading to the room and pointed the pipe out to him. Hughes, called as a witness by appellee, testified that he was not asked to check any pipe. That he went to the furnace in the basement, turned on the pilot line but could not light it as no gas was coming through the line. That he immediately went over to the gas meter on the west wall of the basement and turned on the meter-cock for the main line to the furnace which was separate from the house line. That the main line to the furnace extended about 15 feet from the meter along the ceiling to the right-front of the furnace and then vertically downwards toward the floor and then into the furnace. That he did not examine the main line of the furnace to see where the nearest meter-cock was or check the line in any way, but went directly to the meter. That he then went back to the furnace and succeeded in turning on the pilot lights. That the pilot line pipe ran about two inches from and parallel to the vertical portion of the main line of the furnace and was connected to the main line of the furnace at about a waist high level. That he saw the pilot line pipe but did not see the "T" connection or the pipe extending upwards from it. That there was a master

valve on the vertical portion of the main line for the furnace which he turned on after the pilot line was lighted. That this master valve was about three or four inches below the "T" connection where the pilot line pipe and the pipe up into the room in question branched off from the main line for the furnace. That he checked the draft at the rear of the furnace and noticed the flue connection of the hot water heater was not properly in place and advised Mrs. Owen of that defect after shutting the water heater off. That he then left the premises.

When Hughes turned on the meter-cock on the furnace line, natural gas, of course, flowed into the pilot line and also through the uncapped line into appellee's room, resulting in the explosion and fire which caused the injuries complained of in this action.

### Opinion.

(1) The trial court submitted the case to the jury on the issue of appellant's negligence as follows:

"Now, if you find and believe from the preponderance or greater weight of the evidence that the location of this pipe was such that in the exercise of that degree of care which is placed upon the Defendant, that in the turning on of the gas in that furnace that the Defendant should have seen and observed its condition, and should have refrained from turning on the gas, without inspecting it, and determining where it was going, and that as a direct result thereof, the gas escaped and flowed into the room above, and caused an explosion and fire from which this Plaintiff was injured, then it would be your duty to find a verdict for her.

"On the contrary, if you find and believe from the evidence that the Defendant did not see or in the exercise of ordinary care should have seen the pipe that was leading out of the lead pipe, and there was no reason for him to suspect in the exercise of ordinary care that the pipe, that the leading of the pipe to the room above was dangerous or that gas was likely to escape, that he was not guilty of negligence in that respect, then it would be your duty to find a verdict for the Defendant, regardless of any other fact or circumstance in this case."

Appellant insists that neither it nor Hughes had actual notice of the uncapped riser pipe leading into the appellee's room and that in the absence of actual notice of defects in the house gas pipes and connections, appellant was under no duty to inspect such pipes and connections or look for open ends of pipe upon the assumption that they might be uncapped or unplugged.

The same contention was made by appellant in the case of Gas Service Company v. Helmers, 179 F.2d 101, 104, submitted to this court on the same day as the case at bar and decided January 17, 1950. In the Helmers case the appellant turned on the gas in the Helmers unit of a duplex and some 600 cubic feet of the gas passed through an uncapped riser pipe into the kitchen, resulting in a disastrous explosion and fire. There it was contended by the plaintiffs that when appellant Gas Company turned on the gas in their basement, appellant could have easily detected any escaping gas had it merely checked the meter located in the basement of the attached duplex unit. The Gas Company contended that neither it nor its employee who turned on the gas had actual notice of the uncapped kitchen pipe and that therefore appellant was not guilty of any negligence. In affirming a verdict and judgment for the plaintiffs in that case, we said:

"The rule in Missouri is that 'ordinarily a gas company is under no duty or obligation to inspect pipes and appliances in a house which does not belong to it, and it is not ordinarily liable for injuries which may have resulted from a defect in the house pipes or appliances unless some causal connection is shown between some proven defect and some negligence of the gas company.

"'But notwithstanding such ordinary rule all of the authorities hold that a gas company is to be held to the exercise of a high degree of care which is commensurate with the deadly and dangerous character of its product, and even though the defect is in appliances belonging to the consumer, if the gas company is notified of the escaping gas its duty is to do something

about it, either to repair or cause to be repaired the defect or to shut off the flow of gas until repairs are made.' Barrickman v. National Utilities Co., Mo.App., 191 S.W.2d 265, 268; Golden v. National Utilities Co., 356 Mo. 84, 201 S.W.2d 292; Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670.

"The Barrickman case holds, also, that notice means knowledge of 'any fact that would put an ordinarily prudent man upon inquiry * * *.' See, also, Laughlin v. Findlay, 324 Mo. 1021, 25 S.W.2d 464, 465; Messmer v. St. Louis County Gas Co., Mo. App., 42 S.W.2d 963, 965. In the Messmer case it is said 'notice or knowledge will be presumed where the facts and circumstances are such that the company, by the exercise of due and proper diligence, might have discovered and remedied the defect complained of in timely manner.'"

The same rules of law are applicable to the facts in the case at bar and fully sustain the instructions given by the court. Although Hughes testified that he did not notice the "T" connection when he was turning on the gas into the furnace, the evidence shows that the "T" was immediately in front of him when he stood before the furnace, at about waist high level, that there were merely an inch and a half or two inches separating it from the vertical main furnace line, and he should have seen it. It further appears that Hughes turned on the master valve of the main line for the furnace which valve was only about four inches below the "T" connection. Such a connection on a main line for a furnace is a "very unusual" thing. Hughes had in fact never seen one before but he left the gas turned into it without making the very simple test at the meter which he says would have shown immediately any gas escaping into the house.

Under the law of Missouri appellant failed to use that degree of care commensurate with the deadly and dangerous character of its product. There was no error by the court in overruling appellant's motions for directed verdict or in submitting the case to the jury on the instructions given.

(2) Appellant also contends that the court erred in excluding from the evidence certain provisions of the Building Code of Kansas City, Missouri, which were in full force and effect on the day of the accident in question. The provisions were not pleaded by appellant, but it insists they were evidence "bearing upon the alleged negligence of defendant and which went to disprove such alleged negligence asserted by plaintiff against defendant and were competent under the general denial answer." We think the one provision relating to the prohibition of rubber hose connections was properly excluded as it was immaterial to any issue in the case in that the hose had no bearing on appellant's negligence. The gas which escaped when Hughes turned on the furnace escaped because the riser pipe was uncapped, not because there was a hose connected to it. The other provision relating to the compulsion of capping all unused gas outlets was likewise properly excluded. That provision was offered by appellant to show that Hughes would have had the right to presume that the riser pipe in plaintiff's room was capped, in accordance with the ordinances, if he had seen the "T" connection. It is well settled that presumptions are not properly to be indulged in where exercise of due and proper diligence would have disclosed the actual facts. Mackowik v. Kansas City, St. J. & C. B. Railroad, 196 Mo. 550, 94 S.W. 256, and cases cited.

Judgment affirmed.