245 F.2d 653
 Naomi WOOD, Appellant,
v.
The GAS SERVICE COMPANY, Appellee.
Alfred F. MARTIN, Appellant,
v.
The GAS SERVICE COMPANY, Appellee.
BILTWELL COMPANY, Inc., Tipton Manufacturing Company, Glenridge Trousers Company, and Embassy Manufacturing Company, Appellants,
v.
The GAS SERVICE COMPANY, Appellee.
 Nos. 15698-15700.
 United States Court of Appeals Eighth Circuit.
 May 6, 1957.
 Rehearing Denied July 11, 1957.
 
 1
 COPYRIGHT MATERIAL OMITTED Alvin C. Randall, Kansas City, Mo. (J. D. James, Thad C. McCanse, and Hogsett, Houts, James, Randall & Hogsett, Kansas Ciy, Mo., on the brief), for appellants.
 
 
 2
 Don M. Jackson, Kansas City Mo. (Charles M. Miller, Jerry T. Duggan, and Rogers, Field, Gentry & Jackson, Kansas City, Mo., on the brief), for appellee.
 
 
 3
 Before GARDNER, Chief Judge, JOHNSEN, Circuit Judge, and DONOVAN, District Judge.
 
 
 4
 DONOVAN, District Judge.
 
 
 5
 These three appeals are from judgments for the appellee. The three cases were consolidated for trial in the district court. Appellants will be referred to as plaintiffs and appellee as defendant, as they appeared in the trial court.
 
 
 6
 Plaintiffs commenced these actions to recover for property damage, which they attribute to the negligence of the defendant. Verdicts were returned for the defendant. The record shows a factual situation leading to a violent explosion and fire traceable to escaping gas sold and delivered by defendant to the public, among whom were the plaintiffs who occupied the damaged premises in the central business district of Tipton, Missouri. The explosion occurred at about 2:15 to 2:30 a. m. on January 31, 1955. Fire was immediately observed in the building owned by plaintiff Martin and leased in part to the other plaintiffs.
 
 
 7
 Defendant subsequently dispatched employees to the site of the explosion and fire, and the pipe suspected of leakage was removed by them about 10:30 a. m. on February 2, 1955. Prior to removal it had been underground and connected to an elbow that had an oval-shaped hole in it, which measured about one and three-fourths by one inch in area. Part of the main pipes had been replaced in July, 1951. Plaintiffs disclaim knowledge of this replacement, and plaintiff Martin testified the pipe was removed without his permission. It was defendant's policy to make checks periodically to find leaks in its mains, by driving a bar down to the pipe and lowering a gas indicator into the hole. Defendant would not check the service lines from the curbcock to the meter on the owner's premises without permission from the owner or proprietor. The service line from property line to meter is part of the customer's property and is installed and maintained at the property owner's expense.
 
 
 8
 No one had smelled the gas in the building before the explosion. There is no dispute as to cause and effect. An explosion and resulting fire led to the damage. What initiated the cause?
 
 
 9
 Contending defendant's negligence was the cause, plaintiffs claim the proximate cause was (a) defendant's permitting the escape of gas from a pipe which was not maintained in a safe condition; (b) defendant's failure to shut off the flow of gas in time to avoid the explosion, and (c) defendant's failure to warn the plaintiffs. Plaintiffs, by pleading and evidence, theorized that defendant owned the defective pipe and had knowledge of its defective condition, which fact was not imparted to the plaintiffs. Defendant contends plaintiff Martin owned the pipe in question and that it had no duty of inspection in that respect.
 
 
 10
 In this diversity case the substantive law of Missouri must be applied. The rule in Missouri is:
 
 
 11
 "* * * that, in view of the highly dangerous character of the gas and its tendency to escape, a distributor of gas to the public must use a degree of care in the installation and maintenance of conduits and appliances under its control commensurate with the danger or risk which it is its duty to avoid; that is to say, that one distributing gas to the public must exercise ordinary care under the circumstances attending its operations, to maintain its facilities in a reasonably safe condition, and not that the distributor is liable as an insurer. Under the laws of Missouri, in the absence of a contract so requiring, a distributor of gas is not charged with the duty of inspecting or maintaining privately owned service pipes or appliances in the buildings or on the property of its customers. On receipt of notice from a customer of defects in the customer's service installations, the gas distributor may discharge the duty which the law imposes upon it by shutting off the supply of gas until such time as the owner of the defective pipes or appliances may have corrected the defects in them. But, if the distributor on receipt of such notice from a customer undertakes to inspect the service installation on the property of the customer and to discover and correct the leaks or other defects permitting the escape of gas on the owner's premises, the distributor is obligated to exercise a degree of care commensurate with the known dangerous character of gas to discover and repair the defects in the customer's installations. * * *
 
 
 12
 "The mere statement of the evidence shows how difficult it is for an appellate court to appraise it fairly from the printed record, and how important, if not decisive, in such an appraisal was the opportunity which the trial court had to hear and observe the witnesses on the stand. Obviously, the trial court might have resolved the issues of fact in favor of defendant. But we cannot say that the opposite conclusion is without substantial basis in the evidence or that upon a consideration of all of the evidence it is clearly erroneous."
 
 
 13
 Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670, 674, 679. See also Gas Service Co. v. Helmers, 8 Cir., 179 F.2d 101; Gas Service Co. v. Payton, 8 Cir., 180 F.2d 505.
 
 
 14
 The learned trial court in appropriate and meticulous manner, charged the jury in keeping with Missouri law as outlined in the foregoing cases, as follows:
 
 
 15
 "You must keep in mind one rule of law, that it was the duty of the defendant's agents and employees to exercise a high degree of care commensurate with the deadly and dangerous character of the product, natural gas, handled and distributed by them. That is to say that they owed a duty in relation to the handling of that product to exercise that degree of care which an ordinarily careful and prudent person would use or exercise under the same or similar circumstances commensurate with the dangers to be reasonably anticipated from the handling and distribution of natural gas.
 
 
 16
 "Now the plaintiffs in this case claim that the defendant has failed to exercise that degree of care which the law casts upon it and that the defendant was thereby negligent and as a result of such negligence the explosion in question occurred and the damage to the Martin building and the personal property contained therein was thereby occasioned.
 
 
 17
 * * * * * *
 
 
 18
 "Before the plaintiffs are entitled to recover in this case, you must find and believe from the evidence that if there was an explosion of natural gas in the Martin building in question, that gas came from the leak in the service pipe line exhibited to you in evidence. If the explosion in question or any damage occasioned to the Martin building as a result of explosion or fire was caused by any other source of natural gas, if it was a natural gas explosion, came from any other source than the leaks mentioned in evidence and as exhibited before you in the service pipe in question, then under those facts and circumstances the plaintiffs in this case are not entitled to a verdict at your hands and you should return a verdict in favor of the defendant in this case on all three of the forms of verdict that will be submitted to you.
 
 
 19
 * * * * * *
 
 
 20
 "Under the law and the facts of this case, the defendant's only duty in respect to that service line arose, if it ever did arise, after the defendant had some knowledge of the leakage of gas from that particular service line, or notice of a defect in said line which would imminently cause gas to leak therefrom if it was not replaced or repaired, and thereafter to take such reasonable steps as were necessary to prevent the danger arising from the escape of any natural gas from any defect in said line thereafter remaining operative. * *
 
 
 21
 * * * * * *
 
 
 22
 "Under the law, as I say to you, the service line in question, that is, from the shut-off cock to the curb line in Moreau Street to the building, belonged to Mr. Martin and it was the duty of Mr. Martin to keep that service line in safe operating condition and free from holes from which natural gas might escape.
 
 
 23
 * * * * * *
 
 
 24
 "So it comes down to this, in this statement of the law that I have given to you, that if the defendant had knowledge or means of knowledge of an actual leak in this service line, then the defendant was required to use ordinary care in respect to that knowledge of any such leak. If the defendant had knowledge of surrounding facts and circumstances which would lead the defendant to know and have notice that there was an imminent danger, that is, a danger within a reasonably short period of time, which an ordinarily prudent and careful person would consider as a reasonable period of time, that if this particular pipe had a defect in it it would leak gas, then the defendant would be required to take some action in respect to the service line. But if the defendant did not have actual knowledge of the leaking of gas from the service line or by the exercise of due care could not have had such knowledge, and there were no facts revealed to the defendant from which the defendant would have knowledge or notice that there was imminent danger of a leak in the service line, that any conditions existing in the service line liable to leak gas were remote or contingent, then the defendant would not be liable and there was no duty on the part of the defendant in this case to take any action in respect to this particular piece of service line that was introduced in evidence before you."
 
 
 25
 The interpretation and application of Missouri law in the instant case by the able judge who presided at the trial must and should be adopted on appeal, unless "the burden of demonstrating that the judgments appealed from are the result of a clear misconception or misapplication by the District Court of local law * * * [has been carried by the plaintiffs]. As this Court has frequently pointed out, that burden, in cases such as these, is a heavy one. * * * The question for review is not whether the conclusion of the trial court as to a question of local law is necessarily correct, but whether the court reached a permissible conclusion, * * * that is, such a conclusion as this Court reasonably may believe that the Supreme Court of the State would or might reach, were it called upon to decide the question." See Milwaukee Insurance Company v. Kogen, 8 Cir., 240 F.2d 613, 615.
 
 
 26
 It is obvious to us that the experienced court presiding at the trial gave every consideration to proper application of controlling Missouri law to the facts and evidence of the instant case, and on that basis the Court correctly submitted all pertinent issues to the jury. As Judge John B. Sanborn said in his well-considered opinion in the last-cited case, the burden required for reversal in cases of this type is a heavy one. In our opinion that burden has not been sustained by plaintiffs. The trial court's charge, considered in its entirety, is a correct statement of Missouri law. In our opinion the trial court committed no error.
 
 
 27
 Concluding, it is sufficient to say that we have carefully considered the arguments and briefs of plaintiffs' able counsel, and we find no basis for holding contrary to the judgments appealed from.
 
 
 28
 The judgments appealed from are affirmed.
 
 On Petition for Rehearing
 
 29
 Appellants have filed a petition for rehearing, which seeks to reargue the questions involved and taken into account by us in our previous opinion.
 
 
 30
 Among the things particularly attempted to be stressed in the petition for rehearing is the circumstance that the portion of the service pipe which appellants claimed to be defective was located in the curbing or sidewalk section and thus not technically within the lot line of the property, so that the gas company ought to be held to have a responsibility for its inspection. The trial court regarded the Missouri rule, as to the lack of general duty of a gas company to inspect or maintain service pipes belonging to a property owner, as having application to the whole of such a service pipe extending from the curb line into the building.
 
 
 31
 The Missouri decisions seemed to us to afford no basis for us to declare that this practical concept and evaluation as to local law was in the situation clearly erroneous. Realistically, we know that property owners generally have the use of such a curbing or sidewalk section, to the extent that it does not interfere with the need or exercise of the public's use. In fact, the Missouri Supreme Court has specifically said:
 
 
 32
 "According to the laws of this state, the property owner in cities, towns and villages owns the land to the center of the adjoining street, subject to the easement of the city. It has the right to subject the street to any and all of the uses or purposes for which the street was acquired; but until it does so subject it to one or more of those uses, or so long as he and the city can jointly occupy and use the street without doing `violence to the full, free and complete exercise of the public easement', he is to that extent just as much the owner of the property to the center of the street as he is of of the remainder of the lot, and has the same right to use it in any manner and for any purpose he may see proper not inconsistent with the rights of the public." Cartwright v. Liberty Telephone Co., 205 Mo. 126, 103 S.W. 982, 984, 12 L.R.A., N.S., 1125.
 
 
 33
 Appellants' attempt to reargue their other contentions does not call for further discussion.
 
 
 34
 The petition for rehearing is accordingly denied.
 
 
 35
 GARDNER, Chief Judge (dissenting).
 
 
 36
 This matter is now before us on appellants' petition for rehearing. My associates have decided that a rehearing should not be granted but I have not been able to concur in that view and shall state briefly my reasons for my dissent.
 
 
 37
 A few facts supplemental to those stated in the opinion, called to our attention by the petition for rehearing, should, I think, be stated.
 
 
 38
 The leaking service pipe from which the gas causing the explosion escaped was not located on the plaintiffs' private property but was located in the public street, or at least the jury on the undisputed evidence could have so found. The service pipe here involved was installed under the supervision of and by the employees of defendant's predecessor in 1932 or 1933 and was part of its system. The undisputed evidence showed that the defendant by reason of its franchise installed, maintained and controlled its main lines and all such service gas lines as were located in the public street, and that it and it alone had the right to control or the facilities to repair or inspect the same. There was undisputed evidence that in 1950 defendant removed thirty-four feet of two-inch main line pipe and in 1951 removed six hundred twenty-five feet of four-inch main line pipe from the streets, all in the immediate vicinity of the property here involved, because it had become corroded and was found to be leaking and in a defective condition. These pipes had been in the ground about twenty years. It also appears that subsequent to the explosion in the instant case the defendant without permission of the property owner removed that portion of the service pipe from which the gas causing the explosion escaped.
 
 
 39
 In their petition for rehearing plaintiffs sharply call to our attention certain decisions of the Supreme Court of Missouri which they assert have been overlooked both by the trial court and this court in determining the issues in this case and it is also claimed that the trial court and this court have without warrant assumed the existence of certain facts bearing on the question of notice to the defendant of the condition of the lines used by it in transporting its gas, and that without independently examining the law of the state of Missouri to ascertain whether there was any law or whether the state law was doubtful on the issue involved we have accepted the views of the learned trial judge.
 
 
 40
 The opinion relies largely on what is said by this court in Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670, as stating the applicable law. In that case the service pipe was located wholly upon privately owned property and the case did not involve the question here involved, whether the defendant should be charged with notice because of surrounding facts and circumstances such as are present in the instant case. It is worthy of note, too, that the opinion in the Skelly case makes no mention of Golden v. National Utilities Co., 356 Mo. 84, 201 S. W.2d 292, 297, and it was not called to the attention of the court although it was handed down a short time before the opinion of this court.
 
 
 41
 In the instant case the court instructed the jury that:
 
 
 42
 "* * * under the law there was no duty or obligation on the part of the defendant to maintain the gas service line located between the shut-off cock and the curb on Moreau Street leading up to the meter next to the building, in a safe condition or to make any physical inspection of that line to determine whether any gas was actually leaking from the line prior to the time of the occurrence in question." (Italics supplied.)
 
 
 43
 This instruction manifestly assumed that the service pipe here involved was on plaintiffs' private property and that defendant had no notice of its defective condition. In the instant case the defendant, as has been observed, under its franchise maintained a system of gas lines through which it transported its gas to consumers and this system included service lines and it had the exclusive right to maintain, inspect and control these lines, at least up to the property lines of the consumers. It, and not the plaintiffs, had all the attributes of ownership of its system of lines lying in the public street through which it transported its gas to consumers.
 
 
 44
 The court declined to give the following instruction requested by plaintiffs:
 
 
 45
 "* * * you are instructed that knowledge does not necessarily mean positive information of an unsafe pipe brought directly home to the defendant, but includes knowledge of facts or circumstances that would cause a reasonably prudent person so situated to investigate, where a reasonable investigation would disclose the presence of an unsafe pipe."
 
 
 46
 Apparently the trial court was of the view that actual notice to the defendant of any defect in this service pipe was necessary as it refused this instruction to the effect that knowledge of facts or circumstances which would cause a reasonably prudent person so situated to investigate, where a reasonable investigation would disclose the presence of an unsafe pipe. Under the law of Missouri, as announced in the Golden case, supra, which was a gas explosion case, I think this requested instruction should have been given. In that case the court among other things said:
 
 
 47
 "`A notice is regarded in law as actual when the party sought to be affected by it knows of the existence of the particular fact in question, or is conscious of having the means of knowing it although he may not employ the means in his possession for the purpose of gaining further information.' Actual notice often means knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and to ascertain the ultimate fact. 46 C.J. 539, 540. In 20 Ruling Case Law, pages 346-347, it is said: `What ever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand (emphasis ours); and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts. * * * Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge.' In 38 Am.Jur. § 24, p. 667, it is said: `Every person is under a duty to exercise his senses and intelligence in his actions in order to avoid injury to others, and where a situation suggests investigation and inspection in order that its dangers may fully appear, the duty to make such investigation and inspection is imposed by law.'"
 
 
 48
 It is again to be observed that the defendant had actual notice of the corroded and leaking condition of the pipes which it had removed in the immediate vicinity of this property. It had notice of the length of time that these pipes were in the ground and it also had knowledge of the length of time the service pipe here involved, which was part of its system, had been in the ground, and the question as to whether or not this knowledge was not such as to put it on inquiry should not have been taken from the jury, and our own decisions, notably Gas Service Co. v. Helmers, 8 Cir., 179 F.2d 101 and Gas Service Co. v. Payton, 8 Cir., 180 F.2d 505, both handed down subsequent to the Skelly case, review the decisions of the Supreme Court of Missouri and clearly indicate that this court has accepted and followed the teaching of the Golden case as the applicable controlling state law of Missouri. Thus in Gas Service Co. v. Helmers, supra, it is stated, quoting largely from Barrickman v. National Utilities Co., Mo.App., 191 S.W.2d 265, and Messmer v. St. Louis County Gas Co., Mo.App., 42 S.W.2d 963:
 
 
 49
 "The rule in Missouri is that `ordinarily a gas company is under no duty or obligation to inspect pipes and appliances in a house which does not belong to it, and is not ordinarily liable for injuries which may have resulted from a defect in the house pipes or appliances unless some causal connection is shown between some proven defect and some negligence of the gas company.
 
 
 50
 "`But notwithstanding such ordinary rule all of the authorities hold that a gas company is to be held to the exercise of a high degree of care which is commensurate with the deadly and dangerous character of its product, and even though the defect is in appliances belonging to the consumer, if the gas company is notified of the escaping gas its duty is to do something about it, either to repair or cause to be repaired the defect or to shut off the flow of gas until repairs are made.' Barrickman v. National Utilities Co., Mo. App., 191 S.W.2d 265, 268; Golden v. National Utilities Co., 356 Mo. 84, 201 S.W.2d 292; Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670.
 
 
 51
 "The Barrickman case holds, also that notice means knowledge of `any fact that would put an ordinarily prudent man upon inquiry * * *.' See, also, Laughlin v. Findlay, 324 Mo. 1021, 25 S.W.2d 464, 465; Messmer v. St. Louis County Gas Co., Mo.App., 42 S.W.2d 963, 965. In the Messmer case it is said `notice or knowledge will be presumed where the facts and circumstances are such that the company, by the exercise of due and proper diligence, might have discovered and remedied the defect complained of in timely manner.'" [179 F.2d 104.]
 
 
 52
 In Gas Service Co. v. Payton [180 F.2d 509], supra, this court, referring to the Helmers case, said:
 
 
 53
 "* * * notice means knowledge of `any fact that would put an ordinarily prudent man upon inquiry * * *.'"
 
 
 54
 Here the defendant knew the very dangerous character of the product it was supplying to customers. It had actual knowledge that pipes which had been in the ground for some twenty years in the immediate vicinity of the service pipe here in question had become corroded resulting in leaks. The pipe in question was a part of its system through which it transported its dangerous product and it knew, or was chargeable with knowledge, that this service pipe had been in the ground for some twenty years. It, and it alone, had the means of detecting leaks in its gas system and it, and it alone, had the right to repair such leaks. It was charged with expert knowledge of the characteristics of its product and the condition of its pipeline system. It is to be noted that the court by its instructions removed from consideration of the jury the circumstance that the evidence showed without dispute that six hundred twenty-five feet of defendant's pipe in the immediate vicinity of the property here involved had been removed after it had been in the ground for twenty years or more and was found to be in a corroded and leaky condition.
 
 
 55
 I think the requested instruction properly stated the applicable law and the refusal to give it was prejudicial error. I think the court was also in error in giving the above quoted instruction to the effect that defendant had no duty to make any inspection of the line in question prior to the time of the occurrence in question, and it was likewise error to take from the consideration of the jury the circumstance that defendant had removed from its system pipes in the immediate vicinity of the property in question found to be corroded and leaking.
 
 
 56
 Manifestly, there is no dearth of authority in the decisions of the Supreme Court of Missouri on the questions here involved. Nevertheless, the court in its decision did not consider these controlling authorities but instead accepted the views of the trial judge — thus, in effect, depriving appellants of their right of review by this court.
 
 
 57
 The present law of Missouri on the question of notice as to defects in the gas lines through which the company's product is transported to customers, as disclosed by the Golden, Barrickman, Messmer, Helmers and Payton cases, does not differ materially from that of other jurisdictions. The Supreme Court of Minnesota in Manning v. St. Paul Gaslight Company, 129 Minn. 55, 151 N.W. 423, 424, L.R.A.1915E, 1022, makes this observation:
 
 
 58
 "Whether defendant owns the pipes in which its gas is confined or not is not important, for, the fact remains, such pipes are of its choosing as to kind, quality, and method of installation. They are not subject to the care or interference of any one but defendant."
 
 
 59
 In Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 568, 40 L.Ed. 712, the Supreme Court among other things said: "Nor do we think that this duty was affected by the circumstances that the cost of the labor and materials used in the construction of the connection and gas box was paid by an occupant or owner of property who desired to be furnished with gas. As the service pipe and stop-cock was a part of the apparatus of the company, and was used for the purpose of its business, it is entirely immaterial who paid the cost, or might, in law, on the cessation of the use of the service pipe and gas box by the company, be regarded as the owner of the mere materials."
 
 
 60
 In Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31, 36, the Supreme Court of Oklahoma points out that:
 
 
 61
 "The gas which caused the damage was defendant's gas, and was turned into the pipes by defendant with knowledge on its part that it was a highly dangerous substance and subject to escape. Through the duly appointed agents and employees, defendant was charged with knowledge that its gas was being transported through the pipes in question."
 
 
 62
 In Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215, 220, we considered the question of the sufficiency of the evidence to take to the jury the question of notice. That too was a gas explosion case. On this point we said:
 
 
 63
 "The natural gas which the Company was transmitting through this pipe was of highly dangerous character and it owed a duty to the public to exercise a degree of care commensurate with the danger involved in the transaction of its business. It knew when this gas line was laid and it was its duty to know what the probable life of the gas pipe would be in the soil where it was laid. While the defendant did not have actual notice that gas was escaping from this perforated pipe, it did know that gas would escape from a perforated pipe and it was charged with knowledge, at least the jury might have so found, that this pipe had probably become perforated. It knew that the pipe had been in the ground for more than twenty-five years and it, rather than the plaintiff's decedent, should have known what the condition of the pipe was and the danger arising from its deteriorated condition. Under the circumstances disclosed by the record the jury might properly have charged the Company with constructive notice and if so that notice is just as effective as actual notice."
 
 
 64
 I conclude that plaintiffs have not had a fair trial in this case and that on appeal this court has erroneously interpreted the applicable law of Missouri and has overlooked and failed to give effect to undisputed facts, and that in the furtherance of justice a rehearing should be granted.