GAS SERVICE CO. v. LONDON & LANCASHIRE INS. CO., Limited.

No. 14216.

United States Court of Appeals
Eighth Circuit.

April 9, 1951.

Rehearing Denied May 9, 1951.

---

E. P. Dwyer, Jr., Joplin, Mo., A. E. Spencer, Jr., Joplin, Mo., and Jerome T. Duggan, Kansas City, Mo., for appellant.

Robert E. Seiler and Seiler, Blanchard & VanFleet, all of Joplin, Mo., for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This action was brought by appellee insurance company against appellant gas company to recover a loss due to damage to a residence caused by an explosion of gas. The appellee insured the owners of the residence against loss or damage to the insured premises from fire or explosion, and following the explosion paid to the owners the sum of $3,794.77 in settlement of their loss and was subrogated to all their rights and claims against the gas company. The case was tried to the court, which at the conclusion of the evidence found that the explosion was caused by the negligence of the gas company in failing to properly inspect the service line connecting the damaged residence with the gas company's distribution line. Judgment was entered accordingly, and the gas company appeals.

The explosion occurred on October 28, 1948, a few minutes after the gas company had connected its distribution line with the service line of a newly-constructed residence, the property of Houston Morris and his wife, Nina Morris, in Joplin, Missouri.

The gas pipe in the house and the line from the house to the gas company's

main in the street were installed by a plumber employed by the owners. The evidence shows that the explosion was caused by gas which escaped from a break in the service line from the gas company's distribution line in the street adjacent to the property, to the gas company's pressure regulator and meter connected with the service line on the outside of the residence, at a point where the service line passed through the wall of the basement. The escaping gas permeated the loosely packed earth in which the service line was laid and, following the service line, escaped into the basement of the house where it was ignited by a spark from an electric light fixture.

In the complaint the gas company was charged with negligence causing the explosion: (1) in failing to detect a break in the service line connecting the gas company's distribution line with the gas meter; (2) in failing to test the service line before delivery of gas to the customer through the meter, when by the exercise of reasonable care it should have known that the pipe was open at both ends when the gas was turned on; and (3) in negligently failing to place the gas pressure regulator farther from the house, thereby negligently permitting high pressure gas "to come close to the dwelling and close to the entrance into the basement." The last charge of negligence was explicitly withdrawn by the plaintiff during the course of the trial.

The answer was a denial of the charges of negligence and a plea of contributory negligence.

Section 626 of the Code of the City of Joplin provides that: "* * * Every job of gas piping must be reported to the Chief Plumbing Inspector as soon as roughed in, and it must show no leakage under a ten-pound pressure on a spring or mercury gauge at the discretion of the Chief Plumbing Inspector, for fifteen minutes. This test must be made by the Chief Plumbing Inspector, and no job of gas fitting shall be concealed nor connected to a gas supply system until a certificate of inspection has been issued

for the same by the Chief Plumbing Inspector. * * *"

Section 637 of the same article of the Code of Joplin provides that: "All gas services shall be placed in separate ditches from water services or sewers, unless at the same elevation, when such service pipes may be placed in the same ditch, provided they are twelve (12) inches apart."

The chief plumbing inspector in office in Joplin at the time of the explosion and for three years prior thereto, C. O. Baggerly, a plumber of approximately 50 years experience interpreted the City Code to provide for the pressure test on the gas lines and pipes within a building and for only a visual inspection of service lines outside of the building. Following this interpretation he made the pressure test on the gas line leading from the meter into the house as required by the ordinance. The test showed no leaks. He examined the service line leading from the meter to the distribution line in the street before the ditch in which it was laid was filled, but made no pressure test. This examination showed that the pipe in the service line was in good condition, properly laid and joined, with one exception. The line leading from the distribution main in the street to approximately five or six feet from the basement wall was one and one-quarter inch pipe. From that point on, one inch pipe was used. The connection between the two sizes of pipe was made by a bushing and coupler which is not as safe as a reducer for such connections, but which the inspector passed because at that time correct reducers were unavailable.

The evidence does not show that the gas company knew of the type of construction used by the plumber and passed by the city inspector for this connection. The inspector had never, during his service as chief inspector, had any understanding or agreement with the gas company concerning the character of inspections made by him before issuing a certificate of approval. In his opinion the break in the service line which occurred at the coupling was caused by some heavy vehicle driving across it.

Baggerly was succeeded in the office of chief inspector on September 16, 1949, by A. L. Moore. Moore testified that he had held the office of chief inspector in Joplin from 1942 until March 1945, when Baggerly took over the work of the office. Testifying for the plaintiff from his experience as chief inspector, Moore said that the pressure tests made on behalf of the City were only of the gas pipes in a building; that this had been the custom and practice in Joplin since about 1918; that in the year 1942 an official of the gas company in charge of the service connections had said to him, "You check the inside, you check from the meter in the house lines, we will take care of the rest." On two or three occasions he had seen the gas company testing service lines between the gas meter and the distribution main.

Testifying as an expert this witness said that in his opinion gas under a pressure of ten pounds to the square inch could be heard escaping from the break in the service line on the Morris premises by a man working at the gas meter. After the explosion, this witness then in office as chief inspector, required the gas meter and pressure regulator to be removed from the house to the property line near the street. No other change was required in the service line. Thereafter, Inspector Moore issued a permit to the gas company to connect the property with its service main. The gas company does not connect its mains with service lines until after the issue of the permit by the chief inspector.

Olin Staley, a plumber of 17 years experience, testified that in his opinion gas escaping from the break in the Morris service line at ten pounds pressure a square inch could be heard and its odor detected by a person working near the meter.

On October 27, 1948, Inspector Baggerly issued over his signature the permit of the Department of Public Safety of Joplin which read as follows: "Permission is hereby granted to Nina Morris located at 2020 E. 15th to connect for gas."

This permit was presented to the gas company which at the request of Mrs. Morris at about 9:30 A.M. on the following day installed the gas meter at the location described above and connected the service line with its distribution main in the street. At the time this work was done, the employee inspected the gas outlets in the house, installed the gas meter, adjusted the regulator, reducing the pressure from ten pounds to four ounces in the house pipes, and turned on the gas. According to his testimony there was no indication of any break in the service line. After the gas was turned on, the meter hand showed no leaks in the house line. He smelled no gas nor heard any noise of escaping gas. He did not make a pressure test on the service line between the meter and the gas main in the street. It is conceded that such a test would have shown the presence of the break in the service line.

Mrs. Morris reached the house while the service man was engaged in installing the meter. She and a Mrs. Kersch who accompanied her testified that they detected a strong odor of gas as they climbed the terrace from the street into the yard. As they went around the house toward the back door, there was a strong odor of gas. The odor of gas was strong around the back door of the house. These women remained in the house for a period of five to twelve minutes when they went out to tell the gas company's employee about the odor of gas. When they reached the place where the meter was installed, they detected a strong odor of gas and heard a hissing sound as if gas was escaping. The gas company's employee had left.

Mrs. Morris requested Mrs. Kersch, who was returning to her home, to call the gas company and the plumber who had installed the gas service line and gas pipes in the house. The call was made within about 30 minutes. In the meantime Mrs. Morris called a workman in the yard of the residence, and with him went into the basement to look for a gas leak. When the yardman turned off an electric light in the basement as he and Mrs. Morris were leaving, the explosion occurred.

The court made the following findings of fact:

"That at the time defendant turned gas loose from its main in 15th Street, into the service line leading from the curb line of the Morris property up to the meter set by defendant at the meter loop next to the Morris home, defendant knew or by the exercise of ordinary care should have known that no test, of any kind, had been made of said service line, to determine whether the same would contain gas under pressure of 10 pounds per square inch.

"That defendant, having set its meter and regulator for service of gas to the Morris premises at the meter loop, retained possession and control of all gas carried from its main in 15th Street up to the meter set by defendant at the meter loop, and utilized the service line in question as part of its distribution system for distributing gas to the Morris property.

"That before turning gas into said service line, defendant had means and appliances with which to make an air pressure test of said service line, which said test would have made known to defendant any leaks existing in the service line. That said air pressure test was a reasonable one to make and such as would have been made by a reasonably prudent person under the same or similar circumstances. Had defendant used such air pressure test it could have ascertained and discovered that a leak existed in said service line and with such knowledge defendant would not have turned gas loose from its main in 15th Street into said service line, and the explosion mentioned in the evidence would have been avoided.

"That turning gas into said service line without making any reasonable test of any kind constituted negligence on the part of defendant. As a result of such negligence defendant caused gas to leak from the fracture of the service line in question, which permeated the Morris premises in explosive mixture, and as a consequence thereof the explosion in question occurred when Mr. Wilfley turned off the electric light in the basement of the Morris home."

After declaring the law to be that the gas company was not an insurer against explosion of gas owned and distributed by it, but was required only to use that degree of care commensurate with the known dangers incurred in its distribution, the court made the following declarations:

"That defendant had the duty to reasonably inspect and test any and all pipes and equipment utilized by it in the operation of its said business to determine that they were reasonably safe to use for the purpose to which they were put, whether said pipes and equipment were owned by defendant or not, so long as defendant retained control of the gas within such pipe lines or equipment.

"That defendant in utilizing the service line in question to carry gas from its mains in 15th Street under 10 pounds of pressure up to the point of the inlet connection of the meter mentioned in the evidence, made said service line a part of its distribution system and defendant had the duty to inspect and test the same before turning gas loose therein."

In its memorandum on motion for a new trial, the court declared the law as follows: "In the operation of its gas distributing business, defendant recognized that it was essential to said operation that service lines from its mains to its meter boxes were necessary. The system it utilized in said operation consisted not only of its gas storage facilities and mains in the public streets, but also the service line connections to its meters, through which it distributed gas to consumers. Until the gas in said system passed through its meters, defendant had complete and unconditional control thereof. Gas contained in its said system was not delivered at the mains in front of a consumer's property; it was delivered when it passed through its meters, not at 10 lbs. per square inch pressure, but at 4 oz. pressure, available and capable of being used. The fact that the consumer may be required to pay the cost of labor and materials in the installation of the service line does not seem to be controlling. Though the consumer may be the actual owner thereof,

the fact remains that it is a part of the defendant's gas system, which defendant utilizes to distribute its gas and it is duty bound to reasonably inspect and maintain the whole of its said system in a reasonably safe condition whether actually owned by it or not. Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215."

Appellant's plea of contributory negligence was denied.

We are not certain what importance on the question of appellant's negligence the trial court attributed to the fact that pressure in the service line from the gas company's main in the street to the meter and pressure regulator at the house was maintained at ten pounds a square inch. If the court's finding of negligence on the part of the gas company was based on this fact, it is clearly erroneous under the pleadings and evidence in this case. The gas pressure was maintained at ten pounds a square inch in the service line because the pressure regulator was installed by the meter at the point where the service line entered the basement of the Morris residence. But the complaint's charge of negligence against the gas company on this ground was withdrawn by the plaintiff during the trial, and there is no evidence in the record to sustain a finding that the maintenance of high pressure in the service line was contrary to accepted practice or sound principles in gas distribution, and no evidence justifying the findings of negligence from this fact alone.

But putting this question aside for the present, the court declared the law to be that the service pipes on the Morris property were a part of the distribution system of the gas company which it was bound "to reasonably inspect and maintain in a reasonably safe condition," and this irrespective of notice of a defect or dangerous condition in the service line. With this statement of the law, we are unable to agree.

The only authority cited by the court in support of its conclusion of law is Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215. The Mattson case did declare the Nebraska law as stated by the trial court. This case is controlled by Missouri law. The question of Missouri law under consideration here has been before this court in three recent cases involving gas explosions.

In Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670, at page 674, we stated the Missouri rule as follows: " * * * The rule is that, in view of the highly dangerous character of the gas and its tendency to escape, a distributor of gas to the public must use a degree of care in the installation and maintenance of conduits and appliances under its control commensurate with the danger or risk which it is its duty to avoid; that is to say, that one distributing gas to the public must exercise ordinary care, under the circumstances attending its operations, to maintain its facilities in a reasonably safe condition, and not that the distributor is liable as an insurer. Under the laws of Missouri, in the absence of a contract so requiring, a distributor of gas is not charged with the duty of inspecting or maintaining privately owned service pipes or appliances in the buildings or on the property of its customers. On receipt of notice from a customer of defects in the customer's service installations, the gas distributor may discharge the duty which the law imposes upon it by shutting off the supply of gas until such time as the owner of the defective pipes or appliances may have corrected the defects in them. But, if the distributor on receipt of such notice from a customer undertakes to inspect the service installation on the property of the customer and to discover and correct the leaks or other defects permitting the escape of gas on the owner's premises, the distributor is obligated to exercise a degree of care commensurate with the known dangerous character of gas to discover and repair the defects in the customer's installations. Barrickman v. National Utilities Co., Mo.App., 191 S.W.2d 265, 268; Hanson v. City Light and Traction Company, 238 Mo.App. 182, 178 S.W.2d 804, 809; Sipple v. Laclede Gaslight Co., 125 Mo.App. 81, 102 S.W. 608; Nomath Hotel Co. v. Kansas City

410

Gas Co., 300 Mo. 240, 253 S.W. 975; Brauer v. St. Louis County Gas Co., Mo. App., 238 S.W. 519."

■ Gas Service Co. v. Helmers, 8 Cir., 179 F.2d 101, 104, held that "The rule in Missouri is that 'ordinarily a gas company is under no duty or obligation to inspect pipes and appliances in a house which does not belong it it, and is not ordinarily liable for injuries which may have resulted from a defect in the house pipes or appliances unless some causal connection is shown between some proven defect and some negligence of the gas company.'" Citing Skelly Oil Co. v. Holloway and Missouri cases, the court said that even though the defect is in appliances belonging to the customer, if the gas company is notified of the escaping gas, its duty is to do something about it, either to repair the defect or cause it to be repaired, or shut off the flow of gas until repairs are made. The same rule was announced in Gas Service Co. v. Payton, 8 Cir., 180 F.2d 505, 508. The latest Missouri case which we have found, Golden v. National Utilities Co., 356 Mo. 84, 201 S.W.2d 292, involves the liability of a gas company for the escape of gas from a defective service pipe leading from the gas main in the street into the basement of the residence in which the explosion occurred. The proof in that case, as here, was that the gas escaped from the leaking service pipe and followed the line of the service pipe into the basement where the explosion occurred. The gas company was held liable, but only on the ground that it had notice of the defective condition of the service pipe and was guilty of negligence in failing after notice to either repair the pipe or cut off the supply of gas.

There was evidence on behalf of the plaintiff in this case that while the defendant's employee was installing the meter at the Morris home there was a strong odor of gas and the audible sound of escaping gas in the vicinity of the meter. There was evidence from two witnesses that immediately after the gas company's service man had left, the odor and noise of escaping gas, were plainly evident in the vicinity of the meter, and evidence from experts that in their opinion gas escaping under pressure of ten pounds a square inch at a distance of not more than five or six feet from the meter would have created a noise and odor which one working at the meter could have heard and detected. The service man noticed an odor of gas while adjusting the meter, but assumed that it came from gas which he had turned on before the connection of the meter and adjustment of the regulator were completed. We could not say that a finding of negligence on the part of the gas company's employee in failing to hear the noise or to detect the odor of escaping gas in the vicinity of the meter, which he should have heard and investigated in the exercise of care commensurate with the known dangers from escaping gas, was clearly erroneous. The Helmers and Payton cases would support such a finding. But since no such finding was made by the trial court, and under Missouri law the gas company, in the absence of some notice of a defect in the service line, was not required to either inspect or maintain it, we think the judgment appealed from must be reversed.

■ We can not escape the conclusion that the trial court's finding of negligence on the part of the gas company was either without support in the evidence or induced by an erroneous view of Missouri law, and was for that reason clearly erroneous. Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 417, 150 A.L.R. 1056; Hudspeth v. Esso Standard Oil Co., 8 Cir., 170 F.2d 418, 420. Under plaintiff's evidence the service line had received the usual and customary inspection by the City authorities according to the practice followed by the City since 1918. After this inspection the service line was approved and its connection with the gas company's distribution main in the street authorized. The gas company had no notice of the defect or break in the service line. It had the certificate of the City to the contrary. Conceding that the gas company knew that no pressure test of the service line had been made by the City authorities, there is neither allegation nor evidence in the case to sustain a

finding that ordinary care on the part of the gas company required a pressure test before the connection of the service line with the company's distribution main.

Reversed and remanded for a new trial.

On Petition for Rehearing

Rehearing denied without prejudice to right of appellee upon a retrial of the case to present the question of the effect of the Rules and Regulations of the Public Service Commission of the State of Missouri governing the furnishing of gas service.