## LONDON & LANCASHIRE INS. CO., Limited, v. GAS SERVICE CO.

### No. 14642.

United States Court of Appeals
Eighth Circuit.

Jan. 6, 1953.

Johnsen, Circuit Judge, dissented.

Robert E. Seiler, Joplin, Mo., (Seiler, Blanchard & Van Fleet, Joplin, Mo., on the brief), for appellant.

E. P. Dwyer, Jr., and A. E. Spencer, Jr., Joplin, Mo. (Jerry T. Duggan, Kansas City, Mo., on the brief), for appellee.

Before THOMAS, JOHNSEN and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is the second appeal from a judgment in an action by appellant insurance company against appellee gas company to recover for the damage to a residence in Joplin, Missouri, caused by an explosion of gas distributed by the appellee. The insurance company having paid the owners for the damage to the residence was subrogated to all the rights and claims of the owners against the gas company.

On the first trial of the action there was a judgment in favor of the insurance company, the District Court holding that the explosion which damaged the residence was caused by the negligence of the appellee gas company in failing to inspect the property owners' service line connecting the damaged residence with the appellee's gas distribution line. On appeal the judgment of the District Court was reversed and remanded for further proceedings on the ground that on the facts as established by the evidence the gas company was under no duty under controlling Missouri law to inspect the property owners' service line. Gas Service Co. v. London & Lancashire Ins. Co., Ltd., 8 Cir., 188 F.2d 404. In a petition for rehearing the insurance company for the first time introduced the question of the effect of the rules and regulations filed with Missouri Public Service Commission on the law of Missouri relative to the duty of the appellee distributor of gas to inspect the service lines of customers before connecting them with the gas company's distribution mains. The petition was denied without prejudice to the right of the insurance company to present the question upon a retrial of the case.

On the second trial judgment was entered on a jury verdict for the gas company on a charge of negligence alleged in the first trial but not reached by the court. No error is assigned with respect to the sub-

mission of this issue to the jury. The sole question on this appeal is whether the alleged rules and regulations filed with Missouri Public Service Commission were effective to change the Missouri common law rule of liability of a distributor of gas as applied by this court in its first opinion. The trial judge ruled against this contention.

The evidence concerning the cause of the explosion was substantially the same at both trials. It is stated in detail in the first opinion of this court. The explosion occurred in the basement of a new residence, completed but unoccupied. The gas piping on the premises, including the service line leading from the gas company's distribution main in the street across the property of the owners, as well as the gas line in the house, was installed by a plumber employed by the owners of the property. An ordinance of the City of Joplin prohibited connection of a private gas installation with the gas company's distribution line until inspected and passed by the chief plumbing inspector of the city. This inspection revealed a substandard connection in the service line at a point about 70 inches from the gas meter and pressure regulator to be installed by the gas company adjacent to the basement wall of the residence. The plumbing inspector passed this substandard connection because of the scarcity of standard equipment then existing. Following the inspection he issued to the property owners the permit of the Department of Public Safety of the City of Joplin to connect the installation with the gas company's distribution line. The permit was dated and delivered to the gas company on October 27, 1948. On request of the property owners the gas company installed the meter and pressure regulator and connected its main to the gas installation at approximately 9:30 in the morning of October 28. The explosion occurred within less than 30 minutes after the gas was turned on. The evidence shows that at the time the connection was made gas was escaping from the substandard connection in the service line, and that the escaping gas followed the line of least resistance through the loose earth in the trench in which the service pipe was laid into the basement of the residence

where the explosion occurred. Neither the gas company, nor the city plumbing inspector, nor the property owners made any pressure test of the service line before the gas was turned on. It is undisputed in the evidence that if such a pressure test had been made the defect in the service line would have been discovered.

On the second trial the gas company introduced in evidence its printed form "Gas Service Application" and "Transfer Record" signed by one of the owners of the property and dated September 5, 1941. On its face the application is for gas service at a former residence of the property owners. The printed portion thereof reads as follows:

"* * * I hereby represent that the service lines, pipes and appliances into which gas is to be delivered are my property and have been properly inspected, are suitable for the reception of gas and will be so maintained by me. * * * Any gas hereafter delivered to me at any other location shall be subject to all conditions of this agreement. * * *"

The gas company's transfer record shows four transfers of gas service upon this application, the last being to the residence involved in the present action.

By section 393.140, RSMo 1949, V.A.M. S., the Missouri Public Service Commission is given general supervision of all companies distributing gas in Missouri. The section provides that the Commission shall have power "to require every gas corporation * * * to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to be used, and all general privileges and facilities granted or allowed by such gas corporation * * *. Unless the commission otherwise orders, no change shall be made in any rate or charge, or in any form of contract or agreement, or any rule or regulation relating to any rate, charge or service * * * which shall have been filed and published by a gas cor-

poration * * * in compliance with an order or decision of the commission, except after thirty days' notice to the commission and publication for thirty days as required by order of the commission * * *. The commission shall also have power to establish such rules and regulations, to carry into effect the provisions of this subdivision, as it may deem necessary, and to modify and amend such rules or regulations from time to time."

The chapter of the Revised Statutes of Missouri, 1949, V.A.M.S. creating the Public Service Commission provides that "The term 'service,' when used in this chapter, is used in its broadest and most inclusive sense [RSMo 1949, § 386.020, V.A.M.S.]", and also that the jurisdiction of the Commission shall extend "To the manufacture, sale or distribution of gas * * * within the state [RSMo 1949, § 386.250, V.A. M.S.]". By section 393.130, RSMo 1949, V.A.M.S., every gas corporation is required to "furnish and provide such service instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable."

At all times pertinent in the action the appellee gas company had on file with the Missouri Public Service Commission its schedule of rules and regulations governing the furnishing of gas service. These rules and regulations were introduced in evidence. Those pertinent to the issue here are:

"(25) Where gas service pipes from the curb line to the meter are not installed by the company, the work is to be done by a competent and fully qualified plumber. Upon the completion of service lines so installed, an air pressure test of five pounds per square inch is to be placed upon the pipes and connections up to and including the meter cock, and the pressure test is to be deemed satisfactory if this pressure is held without perceptible loss for a period of fifteen minutes. This test is to be made by the plumber installing the gas service line and witnessed by a representative of the company. Gas services are to be constructed of new and first class material, installed in a

workmanlike manner, properly protected and graded, the company reserving the right to refuse to connect to its main any service pipes not passing inspection."

"(32) All parts of a gas supply system up to and including the meter connections, when installed by a gas fitter or plumber on the premises of a prospective customer, shall be reported to and inspected by the company before it is concealed and before it is connected with the main or service pipe which contains unmeasured gas."

"(41) The piping and connections owned by the customer, or on the customer's premises, including the customer's service line, shall be of sufficient size to afford adequate service and shall be maintained in safe, efficient and proper operating conditions by and at the expense of the customer.

"In the interest of the public, the company shall have the right to inspect all new service lines, and may refuse service until the foregoing provision has been complied with, or if test reveals excessive loss of gas through leakage on customer's premises. The company shall also have the right to discontinue service and remove the service connections at the main if this provision be not complied with at all times."

Appellant's contention is that these rules and regulations published by the gas company, and filed with the Public Service Commission as required by law, have the force and effect of law; that when filed with the Missouri Public Service Commission they override the common law rule relative to the duty of a distributor of gas to inspect the service lines of property owners before connecting them with the gas company's distribution mains; that the evidence conclusively established the failure of the gas company to comply with the rules and regulations relied upon; and that this failure, in violation of a duty imposed by Missouri statutory law, constituted negligence as a matter of law entitling the appellant to a directed verdict. Appellant's request for a directed verdict

at the conclusion of all the evidence and its motion for judgment notwithstanding the verdict on the grounds stated were denied.

The conclusion reached by the trial judge was that the interpretation of the regulations was a question of law for the court, and that when properly interpreted these regulations imposed concurrent duties upon both the property owners and the gas company relative to the property owners' gas installation. In the opinion on the motion for judgment notwithstanding the verdict the judge said:

"Under said rules, defendant and plaintiff's assignors had concurrent duties imposed on them, if it is held that said rules have the force and effect of statute law. Concurrent statutory duties, concurrently breached, cannot provide a right of recovery by one party against the other when both are in default.

"It is not necessary to determine herein whether defendant's published Rules and Regulations have the force and effect of law. Whether they do or not, when construed as a whole, they do not change the common law liability of defendant for negligence, if it has knowledge of a leak in a service line and fails to remedy such condition, or turn off its gas."

We are unable to say that the District Judge reached the wrong conclusion. The rules and regulations relied on by the appellant are designed as much for the safety of appellant's assignors as for the protection of the gas company. Rule (25) places upon the property owner the duty of making the pressure test, as well as the duty of constructing the gas installation with first class materials. Rule (25) inferentially and Rule (32) specifically require the owner of a gas installation to notify the gas company of the completion of a gas installation on an owner's property before any of it is concealed. And Rule (41) requires the property owner to maintain the gas installation constructed by him in safe, efficient and proper operating condition. If as appellant contends, these regulations have the force and effect of law, the duties

imposed by them can not be delegated by the property owners to an independent contractor, and the owners' failure to comply with them would, under appellant's argument, constitute negligence as a matter of law.

While it is admitted that the gas company never made a pressure test of the service line, it is also admitted that the owners never requested and never made the pressure test of the service line required by Rule (25). The gas company had no knowledge of the defect in the service line. Moreover, it is a fair inference from the evidence that the service line was not constructed in conformity to the regulations since the evidence shows without dispute that the connection in the service line from which the gas escaped was considered substandard by the plumbing inspector of the City of Joplin, and that gas escaped from this substandard connection immediately after it was turned into the service line.

▮ Appellant also assigns as error the refusal of the court to submit to the jury the question of the negligence of the gas company for an alleged failure to comply with its regulations. The court correctly declined to charge the jury on this question as requested by the appellant because the request as presented, although purporting to submit the question to the jury, was in effect a peremptory instruction to find for the appellant. The instruction also ignores the duty imposed on the property owners by the rules and regulations on file with the Missouri Public Service Commission as interpreted by the court. Nor does the record show that appellant objected to the refusal of this charge.

The judgment of the District Court is affirmed.

JOHNSEN, Circuit Judge (dissenting).

On the previous appeal of this case, Gas Service Co. v. London & Lancashire Ins. Co., 8 Cir., 188 F.2d 404, we appraised the Missouri common law as imposing no general duty upon a gas company to inspect or maintain the service pipes located on the property of a customer and belonging to him. Gas companies in that State therefore would not be chargeable with negligence for injuries to a customer or his property, from explosion caused by a defective condition of such pipes, except (1) where the company otherwise had come to have a duty of inspection, as a matter of contractual or statutory obligation, and had neglected to carry out that duty; or (2) where it had directly engaged in some task related to the condition of the service pipes and had not properly executed that task; or (3) where it had had notice of a defect in the service pipes and had not taken the necessary steps to prevent the danger from remaining operative.

It is the first of these exceptions which is of concern to me here. The proceedings had in the trial court after our remand developed that the gas company had promulgated and filed with the Public Service Commission, under authority of the Missouri statutes, some regulations covering incidents of its service and relationship to customers. Among these regulations was the following: "Where gas service pipes from the curb line to the meter are not installed by the company, the work is to be done by a competent and fully qualified plumber. Upon the completion of service lines so installed, an air pressure test of five pounds per square inch is to be placed upon the pipes and connections up to and including the meter cock, and the pressure test is to be deemed satisfactory if this pressure is held without perceptible loss for a period of fifteen minutes. This test is to be made by the plumber installing the gas service line and witnessed by a representative of the company. * *"

I think that this language, which the company itself formulated, reasonably is entitled to and should be read as a holding out on the part of the company, to a community generally, to an immediate neighborhood, and to any customer, that they could rely upon any new installation of service pipes not being put to use by it for the transmission of gas from a curb line to a meter (the gas during that stage, of course, being still the property of the company, and the service pipes thus being made to serve as a facility for its property) without its requiring the plumber

making the installation to subject the pipes to an air pressure test for leakage and itself witnessing the test, so that it would personally know that the test both was made and was satisfactory. So far as a customer was concerned, the filed regulation constituted a term or basis of service, and the assurance or promise contained in it therefore necessarily had the status of a duty or obligation.

The trial court so assumptively recognized, as its memorandum on denial of plaintiff's motion for judgment notwithstanding the verdict or in the alternative for a new trial indicates. The court however took the position that, even though this was true, there further existed in the filed regulations a provision, which imposed a concurrent and equally controlling duty upon the customer, that had not been performed, and which therefore left the customer without any cause of action for negligence of the gas company. This provision was one that "The piping and connections owned by the customer, or on the customer's premises, including the customer's service line, * * * shall be maintained in a safe, efficient and proper operating condition by and at the expense of the customer."

The majority opinion declares that it is unable to say that the trial court was wrong in its conclusion. To me, however, the holding of the trial court, that the gas company's duty to have a test made for leakage, before a new service line should be put to use in transmitting gas from the curb line to the meter, and the customer's duty to maintain such a service line in proper condition throughout its use are concurrent and overlapping duties, and that the latter therefore in effect cancelled out the former as a basis for liability, seems clearly erroneous.

In the first place, that construction makes the obligation of the gas company under the regulations devoid of any practical and legal content—a construction which, unless compelled, is no more entitled to be made of such regulations than of contracts or statutes. Not only is such a construction of the regulations not here

compelled but, beyond this, I think it is both an unnatural and unreasonable one as well. It is difficult for me to see how a duty to make a preliminary inspection or test of an intended service line before it is put to use is an overlap of or in conflict with a duty to maintain such a service line in condition while it is in use.

In technical concept, the pipes could not constitute a gas service line, unless and until they were in fact used to carry gas. And that use, with its conversion of the pipes into the status of an actual service line, the gas company, under its regulations as it had itself formulated them, was not entitled to make as against a customer, until it had carried out its duty or obligation of having the pipes precedingly tested for possible air leakage. Only after this had been done and the pipes were in use as a service line, would the customer's duty of maintenance begin.

This view gives practical meaning and legal significance to both provisions of the regulations. Its effect is to treat the provision for testing as constituting a modification, in the gas company's relationship to its customers, of the general lack of duty of a gas company under Missouri common law to either inspect or maintain, to the extent of imposing upon the company the duty to have an initial air pressure test made for possible leakage in new installations, before the pipes are put by it into gas service-line use, while at the same time recognizing the provision for maintenance by the customer as being intended to preserve unaffected the customer's duty to maintain the service line after it has been so placed in use.

As I have pointed out, the trial court refused to set aside the judgment in favor of the gas company solely upon the ground, as stated in its memorandum, that, under the regulations, "plaintiff's assignor (the customer) had the 'duty' to maintain said line in safe condition at the very time defendant (the gas company) had the duty to inspect * * *." This view of the regulations was, I think, for the reasons which I have stated above, clearly erroneous. The majority of the court here, however, at-

tempt to uphold the result reached by the trial court upon other grounds also. Thus they say—ununderstandably to me—that the provision of the regulations as to testing, which I have quoted, "places upon the property owner the duty of making the pressure test." They further call attention to another provision in the regulations that "Gas services are to be constructed of new and first class material" and declare as a matter of law (which could hardly properly be done) that a connection in the service line, which, while not conforming to the standard normally required by the building inspector of the City of Joplin was nevertheless approved by him in the war situation, was not "first class material" and so violated this provision of the regulations. And finally they say that there would be no liability against the gas company because of another provision in the regulations that "All parts of a gas supply system up to and including the meter connections, when installed by a gas fitter or plumber on the premises of a prospective customer, shall be reported to and inspected by the company before it is concealed and before it is connected with the main or service pipe which contains unmeasured gas"—no report having been made to the gas company by the plumber before the pipes were concealed.

But all of this overlooks the fact that whatever may or may not have been precedingly done, the gas company thereafter saw fit to connect the installation to its main and to its meter and to turn gas into the pipes without first causing a pressure test to be made of the line. This pressure test it owed the duty of making, even though everything was of first class material and even though the installation had been reported to it for inspection before it was concealed. In fact the view might well be taken that the duty to inspect the installation before concealment was just as much a modification of the gas company's common law lack of duty to inspect as its obligation to cause the service line to be subjected to an air pressure test before the introduction of any gas therein, and that it had no right to turn gas into the service line and ignore its duty to inspect merely because the installation had not been reported to it for physical inspection before concealment. The regulations contained an express reservation of "the right to refuse to connect to its main any service pipes not passing inspection", and any service pipes which it had not had the opportunity to examine could certainly hardly be said to have passed its inspection, unless it chose to rely upon the plumber's work, as it did here in proceeding to make the connection to its main and meter, and so waived its right of personal inspection and would be chargeable accordingly.

The controlling considerations here, however, are that, regardless of what had precedingly happened, the explosion would not have occurred if the gas company had not connected up the installation to its main and turned gas into the service line; that it had no right so to do until it had subjected the service line to a pressure test for possible leakage, whether from defective material, improper workmanship or any other cause; that had it made such a pressure test as the regulations required the defect which caused the explosion admittedly would have been revealed and the explosion would not have occurred; and that therefore, no matter what had previously been done or not been done, the immediate proximate cause of the explosion was the turning on of gas into the service line withtout having had the leakage test made.

For purposes of this dissent, I have not deemed it necessary to consider whether the failure of the gas company to have the pressure test made, as a violation of the filed regulations, would be entitled to be held to be negligence per se or merely to be found to be negligence as a fact, since in either event the judgment would have to be reversed and the cause remanded for further proceedings. That question would be a matter for resolution by the trial court as one of Missouri law.